IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BOARDWELL, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 1:25-cv-01190 |
| MONEXABA.VIP, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

## ORDER GRANTING PLAINTIFF'S REURGED MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER

Plaintiff filed a Motion for *Ex Parte* Temporary Restraining Order (ECF No. 9), in which it seeks an order requiring the freezing of accounts associated with various addresses at a number of cryptocurrency exchanges and authorization to issue subpoenas to various third parties likely to be in possession of information about the Defendants. The Court has reviewed Plaintiff's Motion and finds that, for the reasons set out therein, Plaintiff faces a risk of irreparable harm if the requested relief does not issue and notice to the Defendants should not be required. Accordingly, Plaintiff's Motion is hereby **GRANTED**.

### I.    Background

Plaintiff's relevant allegations are as follows. In November 2024, the victim ("Victim") met a person claiming to be named Ron Wilson on a dating website. Dkt. No. 1, Complaint (henceforth "Complaint"), ¶ 14. The two began

messaging regularly. *Id.* He eventually told Victim about his success investing and trading cryptocurrencies and introduced Victim to a platform called monexaba.vip. *Id.*, ¶ 15. Wilson said he knew how to make profits using monexaba.vip and offered to teach Victim how to do the same. *Id.* He encouraged Victim to make a monexaba.vip account, which Victim did. *Id.*

Over the next several months, Wilson 'trained' Victim in cryptocurrency trading using the monexaba.vip platform. *Id.*, ¶ 16. When Victim was ready to make a deposit on monexaba.vip, the platform provided her asset-transfer instructions via the platform's customer-service chat or on its "deposit" page. *Id.* Victim completed the transactions as instructed. *Id.* Each time Victim deposited assets at Wilson's direction, the cryptocurrencies transferred were reflected in Victim's transaction history and account balance on the monexaba.vip platform. *Id.* Wilson even purported to 'deposit' $1,000,000 in cryptocurrency into Victim's account on the monexaba.vip platform. *Id.*, ¶¶ 16-17. Over time, Victim sent assets to monexaba.vip with a dollar-denominated value of more than $633,000.00. *Id.*

Victim's balance on the monexaba.vip platform appeared to grow rapidly—eventually showing a balance of crypto assets worth more than $1.8 million in her account. *Id.*, ¶ 18. But when Victim attempted to withdraw these assets, monexaba.vip informed her that she would have to pay various "fees" in order to have her assets released. *Id.* Victim began to believe she had been scammed. *Id.*

Plaintiff now alleges that monexaba.vip's explanations as to why Victim could not withdraw the funds were lies. *Id*., ¶ 19. Plaintiff claims the real reason monexaba.vip would not return Victim's assets is that monexaba.vip is not a real trading platform. *Id*. Instead, Plaintiff alleges that Victim was the victim of what is known as a "pig-butchering scam." *Id*., ¶ 4. According to Boardwell, this is a type of investment scam in which the perpetrators deceive victims into depositing their assets on a fake-but-realistic-looking "trading" or "investment" platform, where no trading or investment ever occurs. *Id*., ¶¶ 2-4. Instead, the assets are simply stolen. *Id*.

Evidentiary materials submitted by Plaintiff show that Victim's experience is very similar to the those of other pig-butchering victims described in journalistic outlets and law-enforcement reports. Dkt. No 1-1, Declaration of Evan Cole ("Cole Dec."), ¶ 5.

After retaining counsel, Plaintiff engaged an investigator to perform blockchain analysis and generate a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. *Id.,* ¶ 6. Plaintiff's investigator was able to trace Victim's allegedly stolen assets to addresses associated with two distinct cryptocurrency exchanges: Binance and OKX. *Id.* In the instant Motion, Plaintiff asks the Court to order that these exchanges temporarily freeze the accounts associated with the addresses Plaintiff has identified as receiving the assets stolen from Victim, to preserve assets for recovery.

## II.    Analysis

Plaintiff has met the requirements for issuance of a temporary restraining order for the following reasons.

### A.    Temporary Restraining Order

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an Declaration or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." FED. R. CIV. P. 65(b)(1)(A)-(B).

Both requirements are met here. Plaintiff's Complaint, the Cole Declaration, and the blockchain-tracing report show the likelihood of immediate and irreparable injury or loss. These materials suggest that Victim was in fact the victim of a prevalent form of cybercrime—the "pig-butchering scam"—which features well-established and recognizable patterns of deception. *See* Complaint, ¶¶1-3; Cole Dec., ¶3 (concluding that Victim was the victim of a pig-butchering scam). Several federal courts, including this Court, have issued *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[1]

---

[1] *See, e.g., Harris v. Upwintrade*, 1:24-cv-00313-MJT (E.D. Tex.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case);

In addition, Plaintiff's attorney has certified why notice should not be required. As discussed in the Motion, the Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). Under this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM,

---

*Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Several courts have found that this same reasoning justified issuance of *ex parte* freezing orders in crypto-fraud cases analogous to this one.[2]

Here, the thrust of Plaintiff's allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority. While at this stage these are simply allegations, Plaintiff has provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion. This is sufficient to justify issuance of an *ex parte* order under these unique circumstances.

Having found that the procedural requirements for issuance of an *ex parte* restraining order are met, the Court now turns to the substantive standard. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened

---

[2] *See, e.g.*, *Gaponyuk v. Alferov*, No. 223CV01317KJMJDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

Plaintiff has met each of these requirements. On the merits, Plaintiff makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. Complaint, ¶¶22-33. Plaintiff has alleged and provided evidence that the Defendants deceived Victim and misappropriated her assets in what appears to have been an intentional scam. Complaint, ¶¶14-20; Cole Dec., ¶5. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that Plaintiff will indeed be able to prevail on these claims once a full evidentiary record is developed. In addition, the Court notes that asset freeze Plaintiff seeks in this instance is permissible in light of his request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Plaintiff has also shown that irreparable harm will ensue absent the restraining order sought, for the same reasons explained above. In light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that Plaintiff's request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts in similar cases. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to Plaintiff outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. Maintaining the assets at the destination accounts is perhaps Plaintiff's only realistic chance at a future recovery in this case. In contrast, the Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court")."

Finally, the Court finds that issuing the injunction is in the public interest. Plaintiff has adduced evidence showing that he is but one of many victims of what appears to be an epidemic of similar scams. A freezing order will serve the public interest here both by dissuading would-be fraudsters from preying on American citizens, and providing assurance to the public that

courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g., Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

## B.    Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." FED. R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order." *Id.* Courts in this circuit apply a "good cause" standard to determine whether such an order should issue. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard). Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 239.

Many courts, including this Court, have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-related fraud cases like this one.[3] Indeed, in similar cases, courts have held that any privacy

---

[3] *See, e.g., Harris*, No. 1:24-cv-00313-MJT, at p. 9 (authorizing expedited discovery); *Strivelli v. Doe*, No. 22 cv-22060 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges in crypto case and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants"); *Licht*, 2023 WL 4504585, at *4 (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party

interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them. *Gaponyuk*, 2023 WL 4670043, at *4 (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information"). Here, Plaintiff's proposed discovery arises from its pre-suit blockchain tracing and investigation of the Defendants' web property. These investigations revealed a series of third parties likely to be in possession of information about the Defendants. The Court finds that Plaintiff has shown good cause to issue discovery to these third parties and others likely to be in possession of information about the Defendants.

## III.    Relief Granted

### A.    Restraining Order

For the reasons set out in the Motion, the Court finds that the accounts associated with the below blockchain addresses and Destination Exchanges should be frozen.

| *Blockchain Address* | *Destination Exchange* |
|---|---|
| 0xd39c87c95768bfebd420d790321a16f15528f6ee | Binance |

---

served with a request for production shall produce all requested items within 72 hours of the request").

| 0x11b113383ce08e84001dc614f141ae4c27221e31 | OKX |
| --- | --- |
| 0x559432e18b281731c054cd703d4b49872be4ed53 | OKX |
| 0x7a93539c1bf9a96f87044925deb7a0849266213e | OKX |
| 0xADEbA5580eb57fc2eE510F6e3D96d22A255c6131 | OKX |

Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed target addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Addresses and Destination Exchanges.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

### B.  Expedited Discovery

In addition, for the foregoing reasons, Plaintiff's motion for leave to issue expedited discovery is **GRANTED**. Plaintiff is authorized to serve subpoenas on the third parties listed in the Motion and other persons or entities likely to be in possession of information about the Defendants in this matter. Such subpoenas shall comply with Rule 45 and shall be served along with a copy of this Order.

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel within fourteen (14) days of their receipt of Plaintiff's subpoena and this Order.

SIGNED this 14th day of August, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE